UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENNA ROSENFELD, individually, and on behalf of all similarly situated consumers,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CAPITAL MANAGEMENT SERVICES, LP;<br>NORTHSTAR LOCATION SERVICES, LLC,<br><br>　　　　　Defendants. | ) Index No.:  7:19-cv-11490-KMK<br>)<br>)<br>)<br>)<br>) FIRST AMENDED COMPLAINT<br>)<br>)<br>)<br>)<br>) |

Plaintiff, Helena Rosenfeld (hereinafter "Plaintiff") alleges:

## PRELIMINARY STATEMENT

1. This is an action for damages arising from Defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. §1692 *et seq.* (hereinafter "FDCPA").

## JURSIDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

3. Venue is proper in this district under 28 U.S.C §1391(b).

## PARTIES

4. Plaintiff is a natural person, who at all relevant times has resided in Spring Valley, New York and is a "consumer" as the phrase is defined and applied under 15 U.S.C. §1692(a) of the FDCPA.

5. Defendant Northstar Location Services, LLC ("Northstar") with its corporate headquarters located at 4285 Genesee Street, Cheektowaga, New York 14225, is a "debt collector" as the phrase

is defined and applied under 15 U.S.C. §1692(a) of the FDCPA in that they regularly attempt to collect on debts primarily incurred for personal, family or household purposes.

6.      Defendant Capital Management Services, LP ("CMS"), with its corporate headquarters located at 698 1/2 South Ogden Street, Buffalo, New York 14206, is a "debt collector" as the phrase is defined and applied under 15 U.S.C. §1692(a) of the FDCPA in that they regularly attempt to collect on debts primarily incurred for personal, family or household purposes.

## FACTUAL STATEMENT

7.      The FDCPA was enacted to prevent debt collectors from engaging in abusive tactics in order to collect debts from generally unsophisticated consumers.

8.      One type of conduct in particular which Congress sought to prevent is the deceptive tactics engaged in where a debt collector makes false threats and false implications in order to attain payment.

9.      On a date better known by Defendants, Plaintiff opened a personal credit card issued from Barclays Bank Delaware. The card was a Barclaycard Rewards card ending in account number 2623.

10.     In attempt to collect an alleged debt from Plaintiff concerning the Barclay account, Defendant CMS mailed Plaintiff an initial dunning letter on December 13, 2019. Exhibit A.

11.     The letter sought $1,350.26 from Plaintiff on that date.

12.     Along the middle of the letter, Defendant CMS's letter states: "Because of interest, late charges and other charges that may vary from day to day, the balance on the day you pay *will* be greater."

13.     At this time, Plaintiff's account was already delinquent and neither late charges nor other charges would accrue against Plaintiff as of December 13, 2019 and onward. Thus, Plaintiff's balance would not increase due to late charges or other charges.

14.     The letter also led Plaintiff, and would lead the least sophisticated consumer, to believe that nonpayment of the debt would result in continued interest accrual into the future. Upon information and belief, despite CMS's warning of an increased debt, the debt only accrued interest for a matter of weeks, as opposed to months or even permanently as implied. Yet, CMS's letter never makes clear that its statement is extremely limited in time, and will within a short period of time be false. Accordingly, the letter leaves the consumer with a false sense of urgency leading to the belief that nonpayment of the debt would result in an increased amount due and owing. When the consumer knows that an unpaid debt is continuing to accrue interest, it is often lingering in the back of their minds, that the debt must be paid as soon as funds become available to prevent owing more money.

15.     Months later, in February 2019, Defendant Northstar sent Plaintiff a dunning letter attached as Exhibit B for the same debt as Exhibit A. This letter sought a balance owing of $1,418.95.

16.     Between receiving the letter from CMS and Northstar, Plaintiff was never made aware of any change as to the status of the account, such as a status of written off, charged off, or any other change.

17.     The Northland letter stated that no interest had accrued since charge off, listing the interest since charge off balance as $0.00. Plaintiff, as would the least sophisticated consumer, was left with multiple interpretations of this letter, and was left unclear as to the status of the debt, and whether it was subject to increase. Under one interpretation, the Northstar letter implies that interest will not accrue on the debt because the letter does not state that interest would be

accruing like the CMS letter did. Under another interpretation, the letter implies interest will accrue because the prior letter clearly indicates interest would continue to accrue, the amount has increased, and the fact that Northland is specifically listing interest as a data filed with a $0.00 next to it implying that interest would in fact start or continue to accrue.

18. Both Defendant CMS and Defendant Northstar have made deceptive and misleading statements to Plaintiff.

## CLASS ACTION ALLEGATIONS

### The Class

19. Plaintiff brings this as a class action pursuant to Fed. R. Civ. P. 23.

20. Plaintiff seeks certification of the following classes, initially defined as follows:

**CMS Class: All consumers within the State of New York that received a letter from CMS falsely indicating late fees and other charges would accrue within one year of the initiation of this action.**

**Northland Class: All consumers within the State of New York that received a letter from Northland within one year of the initiation of this action**

21. Excluded from the Class are Defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendants, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendants.

### Numerosity

22. Upon information and belief, Defendants have sent identical collections letters in attempt to collect a debt to hundreds if not thousands of consumers in New York, each of which violates the FDCPA. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

23. The letters sent by Defendants, and received by the Class, are to be evaluated by the objective standard of the hypothetical "least sophisticated or unsophisticated consumer."

24. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' records.

### Common Questions of Law and Fact

25. There are questions of law and fact common to the class that predominates over any questions affecting only individual Class members. These common questions of law and fact include, without limitation: (i) whether Defendant violated various provisions of the FDCPA; (ii) whether the Plaintiff and the Class have been injured by the conduct of Defendants; (iii) whether the Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and (iv) whether the Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

### Typicality

26. The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein. Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

### Protecting the Interests of the Class Members

27. Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

28. Neither the Plaintiff nor her counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

**Proceeding Via Class Action is Superior and Advisable**

29. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, this being specifically envisioned by Congress as a principal means of enforcing the FDCPA, as codified by 15 U.S.C.§ 1692(k).

30. The members of the Class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

31. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

32. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

33. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

34. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

35. Absent a class action, the Class members will continue to suffer losses borne from Defendants' breaches of Class members' statutorily protected rights as well as monetary damages,

thus allowing and enabling: (a) Defendant's conduct to proceed and; (b) Defendants to further enjoy the benefit of its ill-gotten gains.

36. Defendants have acted, and will act, on grounds generally applicable to the entire Class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §1692 *et seq.*

37. Plaintiff repeats the allegations contained in the above paragraphs and incorporates them as if specifically set forth at length herein.

38. Defendants' false and deceptive representations to Plaintiff violate Section 1692e, e(2), e(5), and e(10) of the FDCPA.

WHEREFORE, Plaintiff, Henna Rosenfeld, respectfully requests that this Court do the following for the benefit of Plaintiff:

    A. Certify the classes described herein and appoint Plaintiff as Lead Plaintiff, and Plaintiff's Counsel as Lead Counsel;

    B. Enter judgment against Defendant for statutory damages, 15 U.S.C. § 1692k(a)(2)(A) and (B), in the amount of $1,000.00 for Plaintiff and each member of the class;

    C. Award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)3;

    D. Grant such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

39. Plaintiff demands a jury trial on all issues so triable.

Dated: May 1, 2020

                                    Respectfully Submitted,

                                    /s/ Daniel Zemel
                                    Daniel Zemel, Esq.
                                    ZEMEL LAW LLC
                                    1373 Broad Street, Suite 203-C
                                    Clifton, New Jersey 07013
                                    T:  (862) 227-3106
                                    F:  (973) 282-8603
                                    dz@zemellawllc.com
                                    Attorneys for Plaintiff